The next matter, number 23-2031, Diana Fernanda Medina-Suguilanda et al. v. Merrick B. Garland. At this time, would counsel for the petitioners please introduce themselves on the record to begin? Good morning, and may it please the Court. Christian Meyer on behalf of petitioners. I would seek two minutes of rebuttal time. You may. Thank you. This case is before this Court as petitioners have petitioned this Court for review of the Board's affirmance of the immigration judge's denial of petitioner's application for asylum, as well as withholding of removal and humanitarian asylum. The immigration judge's decision was based on a finding that the petitioners had not established that the Ecuadorian government was unwilling or unable to protect petitioner from her abuser, as well as the finding that her assertive, well-founded fear of future persecution was not objectively reasonable, seeing as how the willingness and ability to protect respondents is positive of eligibility for both asylum and humanitarian asylum. I'd like to begin there. So the Board erred in two ways in affirming the determination. The first was that the immigration judge entirely failed to assess whether reporting to the Ecuadorian authorities posed a danger to petitioner. That alone renders the immigration judge's decision, as well as the affirmance by the Board, which was based solely on a finding that petitioner had not established the futility of reporting. But she did call the police, right? No. But the police came. So what happened was her partner had struck her in public, and a member of the community had called the police. So that was the finding, and ultimately she declined to have the police arrest him. And she stated that she feared what would happen to her. But how does that establish that the police are? This is an unusual case. We have cases where the police won't come or the police are part of the gang, but here the police show up. There's no evidence in the record that they're not legitimate, and she declines their assistance. So in assessing both futility and dangerousness, you need to keep in mind the circumstances, and the Board needed to keep in mind the circumstances. So a matter of CGT recognizes that the reasonableness of that failure to seek the protection needs to consider, based on another Board finding and matter of essay, factors like the age. So speaking in relation to petitioner, she began a relationship with her abuser at just age 13. At age 15, she had her first child, and at that time her mother had moved from the community, so she was left alone living with her abuser. What can't every person everywhere say? I don't want to call the police because I don't know what will happen. It may go the way I don't want it to go. That person may be released. That person may do something to me. I mean, it seems like everyone can say that, but what you actually have on the record here is, even though she didn't call, the police did come, did offer to make the arrest. She declines it. However, the law seems to be in that country that all the things of detention and restraining orders and those kinds of mechanisms existed and were in place. So what makes that dangerous thing reasonable any different than any person could always say the exact same thing? So I would point to a couple things. The first is contained within that report. So, yes, the immigration judge did rely on those statements, but the U.S. State Department report, as well as other reports within the record, indicate that the judicial system, which would actually be enacting these things, in relation to gender-based violence, there is inadequate training and there's an overlog of cases and has been described, even by the United States State Department, as inadequate to handle the number of cases. So the failure to – it was unreasonable to consider that he would not be released. In fact, that same report notes that, for instances of domestic violence, an abuser can be released after just four days. So the fact that the dangerous nature that he could come back and harm her, which the record reflects, he abused her by punching her in the face. In another instance, he pulled a knife and threatened himself in front of her. It indicates a very serious likelihood that reporting this man to the police would result in his potential release, as well as a future danger, and that was entirely unaddressed by the immigration judge. Were you going to address the standard of review argument? I'm going to leave the standard of review to amicus, but I would note that, yes, the petitioner is asserting that there's an improper standard of review. The board, as well as this court, has found that in cases where there's mixed questions of fact and law, such as the objective reasonability of a well-founded fear of future persecution, a predictive finding is reviewed clear error. But settled facts applied to the law is a question of law, and that warrants de novo review. And here the record establishes that there's really only one fact that's really being in dispute that should be reviewed for clear error, and it's that whether the response was in fact prompt, which petitioner is establishing it was not prompt, because despite the – there's a couple of different factors that indicate that. So first she indicates that her village was an hour and a half away by car from the nearest police station, and that impacted the response time. The response time indicates she's out in public when she is abused, and that's when the police are called. But by the time they even arrive, she describes it as a while after. They're already at home, and this dispute has already calmed down. So that underlying factual determination, we're arguing, is clear error, because there is no indication that that response was prompt. And while it's true that as the court relied on cases that indicate that a prompt response is indicative of a willingness, here that response really isn't prompt. And she also notes that while the police did arrive in this instance, she noted in her declaration that it was a very uncommon occurrence for that to happen, and that the police often did not respond or assist people in her indigenous community when they did seek the police. And she also noted that in this indigenous community, the administration of justice was left to a single individual. The record indicates this is a practice that's known as indigenous justice. It's recognized by the Ecuadoran Constitution that allows indigenous communities, such as petitioners, to administrate their own justice. So that also draws into question whether or not the responding officers even had the ability to prosecute this individual, say they had taken them to court. The court could have said this is a matter left for indigenous justice, and we have no ability. Well, that's somewhat speculative, isn't it, given the record? I don't think it's necessarily speculative, because while the individual officers indicated- Because there's no evidence in the record as to how the court would have- No, there's not. But there is indication that from petitioner's testimony, as well as supported in the record, that these matters or criminal matters within the indigenous communities are handled internally. So ultimately, the determination that reporting would be futile was clear error. Thank you, Mr. Meyer. Thanks. Thank you. At this time, would Counsel for the amicus please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court. Sang-Yeop Kim for amicus, and thank you for allowing amicus to appear in this case. So we asked the Court to hold as a matter of law that the BIA's assessment, the standard review of the IJ's unwilling or unable conclusion is bifurcated. It has two steps. The first step is a clear error for the underlying factual findings. And then the second step is de novo assessment for the mixed question of law and fact, the ultimate legal conclusion. In 2002, when agency created this regulation, agency received a lot of concern over the scope of the BIA's review. And agency responded that mixed question of law and fact, whether the undisputed evidence and facts satisfy the legal standard. That's being reviewed under de novo. And since then, in all other contexts, past persecution, future persecution, resettlement of asylum and withholding, the nexus of asylum and withholding, the Convention Against Torture Acquiescence, all other contexts, the bifurcated approach has been applied. Now, despite this well-stated interpretation of the regulation, the government argues by relying on matter of CGT that the unwilling or unable question is a pure question of fact. For that position to be correct, the question of this problem then has to be a question that does not implicate the legal standard. What do you do about this issue comes up when we review a BIA determination and don't we have precedent saying that for purposes of our review, we treat it as a question of fact subject to arbitrariness or substantial evidence or the like? So it would seem rather odd that we say, for our review, this is a question of fact, but the BIA erred because they didn't treat it as a question of fact. I understand it's not – I want to start with this is not ideal because we have this tension between this Court's standard review and the BIA standard review, and this Court acknowledges tension in al-Ghulayr, Skoro, and other cases. However, I don't think it's odd because of the different role of the BIA in this Court. So this Court reviews – I think the way that this Court has described question of fact for the purpose of standard review, for the purpose of applying substantial evidence review, I think what the Court really meant was fact-intensive mixed question of law and fact. But the way that BIA serves as a function within the agency is supervisory role. They have more power as a supervisory sub-agency within the agency, make sure that there's no erroneous application of the line of fact to the case, which is why the BIA defers to the pure factor finding, such as credibility finding, predictive finding, what happened, who did it, why did it, as a factor matter and being reviewed under clear error, but then whether the undisputed evidence and fact satisfy the legal standard that's being reviewed under D-No. 4. So I understand that there's tension. It's not ideal, and we take no position in this case. So in al-Zubayn, which was good faith marriage, we sort of said something like, this is a mixed question of law and fact, but it shades far more towards the factual. So we still apply substantial error, but there's still a legal component because we're matching it up to a standard. I guess I just don't understand where this all leads. So I understand what you're saying, which is there's a definition to willing or unable. There's an undisputed set of facts, and someone has to decide whether that's unwilling or unable. And I guess we've said that's a factual matter, and I think it is somewhat of a clear, sort of a mixed question, but it does seem to shade much more to the factual than the legal. So where does that take you at the end? What happens? I think this case, I could use this case in an example. So this is what the IJ made a spec finding. The police arrived. Police did not arrest the private prosecutor because the petitioner declined to have him arrested. And then IJ said the law punishes such domestic violence. The law also, there's protective mechanism being generally enforced, and then makes a conclusion that there's no futility issue. Now, but the same evidence also talks about that there's no political will to end gender-based violence. The same evidence also talks about there's traumatic process for the female minor victims. There is very low conviction. All of that is not disputed. So what the BI should have done, and I'm not saying the BI did not do it. What the BI should have done, what should they do, they should do is, because IJ did not make specific fact finding with respect to those points, consider all those evidence, and to see whether that evidence, despite the IJ spec finding, is enough to satisfy the legal standard and see whether that's sufficient. Now, if we treat it as law, do we start getting into a situation where one case resolves essentially all the cases from a particular country because it's a legal determination, and we're talking about whether the government of that country is or is not willing or able? And so the BIA then, if it says it's fact, it becomes very case-specific. If it says it's law, what happens? I think it's still case-specific. There might be some examples of the pervasiveness of ineffectiveness or pervasiveness of unwilling to control the private prosecution behavior, but I think it's still specific because it really depends on what evidence the petitioner or non-citizens presented before the IJ and what happened to that specific case if it's about the past prosecution. So I understand, Judge Karras, your point, but I still think that it's really case-by-case. And also, unwilling or unable is not the only legal component of a signed withhold. And this is one of the, in my opinion, it's kind of a rare case where I see the IJ agreed with the petitioner on all other points, nexus, protected ground, sufficiency of the past suffering. But then the last component of this, the connect nexus to the government action, is the one that bears that burden. So even if there is a little bit of concern over the one country condition, the aspect sort of resolve all similar cases, it would be rare to assume that that would, for example, open the gate to all asylum seekers from particular countries. So at least in our view, we do not have that. You have to close the gate by making the one determination, particularly if you throw in relocation obligations, and then you have a finding that a particular country, the government of Ecuador, is willing and able, at least in some parts of its jurisdictions, throw in relocation, and you essentially had one ruling wipe out the argument in all the cases. I understand. But I think that for the purpose of standard review, that concern does not go away, even if all of these questions are the factual findings. Because, for example, if there is one IG makes a fact finding with respect to all these points, and basically, for example, the Ecuadorian government is not able to or not willing to control, suppress the gender-based violence, and if the fact finding and the BIA affirms that, and if BIA issues, for example, published decision, then that affects all the similar cases too. So I think at least for the purpose of standard review, I don't think how much the BIA has the power for standard review does not resolve that concern. But, again, I don't think that would become a real concern because of the reasons that we provided. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the respondent please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, my name is Rob Stalzer. I'm here on behalf of the AG. Your Honors, it's foundational in asylum law that we offer protection to those who cannot seek the protection of their own countries, and that's why we have this requirement that an applicant who bears the burden to demonstrate eligibility has to show that their country is unable and unwilling to protect them from third-party harm. Unable or unwilling, right? Unable or unwilling. Or, yes, Your Honor, which is why in this case, Petitioner was ineligible despite the abuses she suffered at the hands of her former partner. Because on the occasion when the police were called to help her, not only did they show up indicating they were able to help her, they wanted to, according to her own declaration, they wanted to arrest him, indicating they were willing to help her. And that's the components that she failed to demonstrate, and that's why she didn't qualify for asylum, or at least didn't qualify to demonstrate past persecution. On the issue of future persecution, whether she could demonstrate an objectively reasonable fear of future persecution depended on who she feared in Ecuador. And she specifically stated when she was asked, who do you fear other than Fausto, her ex-partner, she said, nobody. So the question of where Fausto is is very important to determining whether she has an objectively reasonable fear of future persecution in Ecuador. Because Fausto is not located in Ecuador anymore, or at least he wasn't at the time of this, you know, as far as the record is concerned. So it was pure speculation that he would return to Bogota. It's a little more than pure speculation, though. He's in removal proceedings, right? Yes. Or at least they were at the time. And so it's not an absurd idea that she's going to go back because she's removed. He came with her. It is in his own removal proceedings, and he's going to go back. And while he may have behaved himself while he's in Framingham under the laws of the United States, when he's back in Ecuador, that might be the time to get revenge. That at least doesn't strike me as an absurd sort of chain of logic. Except, Your Honor, it's inconsistent with the facts we have. Because she broke up with Fausto, kicked him out of their shared home while they were in Ecuador. It remained there for a time before they decided to come to the United States together. And according to the record, I think this is, right, this is in the record at 133, they had already devised this plan. They were going to come to the United States together, and she was splitting up with him. He knew that at the time, even when they were still in Ecuador. But she did offer no testimony or evidence that he continued his abuses of her during that period. In other words, it does appear that she was safe for a time. And that's important when we assess this forward-looking, you know, the immigration judge's prediction of what will happen in the future. Because, again, she was able to avail herself of protection in the past, even though she didn't want it. And also, there was this period of time where Fausto didn't bother her. They decided to come to the United States together and then split up. And it's not like a case, for example, Your Honor, sometimes we see cases where there's a threat. A threat, you know, oh, I will get you. Okay, well, that's forward-looking. There's nothing like that here. He never threatened her and apparently has very little communication with her now, just over their shared child. Regarding the standard of review, I did want to address that, Your Honor. We noted in our brief that we think clear error review applies. That is the holding of matter of CGT. And CGT, Your Honors, was based on a decision of this court, which we also cited in the brief, Rosales-Giusto against Sessions. And that specifically said that that question, the unable or unwilling question, quote, is a question of fact, period. It didn't say it was a question of fact in law or a mixed question of fact in law. This court came out and said, this is a question of fact. Why isn't it? I mean, okay, I understand what you said then. That's a problem for us. But why is it? I mean, because it strikes me there's got to be some definition to what unable or unwilling means. And it's the usual work of a court or administrative agency. Here are the facts. We all agree upon what they are. The police showed up. She asked the guy not to be arrested. They didn't arrest him. Like, those are the facts. And then there's some sentence that we have that says unable or unwilling, what that means. And we apply those facts to that sentence. That doesn't feel like it's a matter of fact. It feels like it's a question of does the agreed facts meet the sentence. Because the conclusion ultimately depends only on the facts as determined by the immigration judge. I mean, it's impossible to divorce that evaluation from the factual findings themselves. That's why I think this court has said repeatedly over the years that that was a factual question. Up here, it reviewed for substantial error, for substantial evidence. But before the board, reviewed for clear error. Because there's no way to divorce that final conclusion. How do you distinguish the treatment of the analogous issue under the CAT? Well, for CAT, you know, this court and the other circuits have all said predictive findings are findings that rely on predictions. Those are reviewed for clear error before the board. And I think to a great degree, the unable and unwilling determination relies on some predictions about what the government in the foreign country is able and willing to do. It does rely on an immigration judge's assessment based on all the evidence and the facts of that individual case, whether that government would be able and willing. Which I think tends to err on the factual side. That's really a factual question based on the evidence that each individual applicant brings. Right? Because every single case has to be assessed on its own merits. Which is why, again, this is a factual question. And then how does this work out? I mean, if on a given set of facts, an IJ said the answer is X, and given the legal standard that was the wrong legal standard, it was not X, wouldn't that be clear error? So I'm not sure how the... Is there in this context a subset of these determinations where it's not fact, but it's all law? In other words, take a negligent action. You could have stipulated facts. No dispute as to the facts. Was it negligent or not? You would say we're going to defer to the fact finder. In this circumstance, yes, because that's what the regulations require of the board. Which may be different than, for example, a negligent action. Here the board is relying on its own interpretation of its own regulations, which it's still allowed to do, to apply clear error to these sorts of factual determinations by the immigration judges. I'm just checking my list to make sure I've covered everything. I would say, Your Honors, this case is most analogous, I think, to Singh against Garland, which was also cited in our brief, for the proposition where there is generalized evidence of country conditions that show that some abuses are taking place. Those cannot compel a contrary conclusion when there's a specific evidence related to the applicant. And that's what we have here. We have a specific condition where when Petitioner needed help, the police came. They were able and willing to help her. And that cannot be overwritten, or at least the evidence does not, the generalized evidence of deplorable conditions for some women in Ecuador doesn't overcome that specific evidence in her case. Does the analysis end with the police? So the argument I think I heard made was, well, maybe they would have arrested him, but this system is so broken that he's going to be released, and that's the danger, but it's also the unableness in a sense, right? Sure, the first step happened, but that's not going to lead to what she wants, which is her protection. Right. The evidence on that was, I guess, a little bit mixed, because there's some evidence that, first of all, there are domestic violence laws. The record says they are enforced, the protective orders and remediation orders and things like that. And, again, the evidence says those are enforced. It also says that, yes, there are deplorable conditions. It is difficult for women to sometimes report. It is difficult for women to sometimes police even to take them serious, which goes to the futility question, right? Oftentimes the record demonstrates when women called for help, police wouldn't come. It was futile to call. That wasn't the case here. When the police were called, they did come, and they wanted to arrest Fausto. It's just that Petitioner didn't want them to. So, as a result, Your Honors, we urge you to deny this. And the Petitioner would say, though, because I know it's futile, because I understand that this system is broken. And so even if the police helped me at this moment in this very small step, the odds that this goes in a way that protects me seem remote. And so that's why I said don't take them, because that's going to lead to something really bad. And so that's, I think, what they're saying, that that's what makes it futile or dangerous or whatever the right word is. I don't know that she said that she thought that this wouldn't help her. I think she said she felt in danger from him, and she also didn't want the police, she didn't want Fausto to be dragged away in front of the child's father, which is a separate thing that doesn't really speak to dangerous or futility. That was Petitioner's choice. She just didn't want her child to see that. But it certainly doesn't demonstrate an unwillingness or inability of the government or the police in Ecuador to help her. Again, in her particular case, it seems that they were willing. She said in her declaration the police wanted to take him away. Right. I guess my question is when we say the government, that's multi-pieces. And we're talking about stage one, the police, but that's a very short-lived moment, and then things will happen. And how do those other things play into the thinking about what unwilling or unable means? Well, Petitioner didn't bring evidence on that issue. It would have been one thing if perhaps the declaration had gone on to say, oh, I had a friend who tried to report and, you know, her abuser showed up the next day, or something like that. Something in there where we could have some of that evidence. But it was Petitioner's burden to bring that evidence, and she didn't. Your Honors, I won't belabor the point if there are no other questions. Judge Salyer, no? We're off. Thank you. Thank you for your time. Thank you, Counsel. At this time, Counsel for Petitioner has a two-minute rebuttal. Please reintroduce yourself on the record to begin. Christian Meyer for Petitioners. I would like to first note that Petitioner did directly testify saying that he would only be held for a short time before they released him, and that played a part. That's at AR 163. That played a part in her thinking that a danger was posed. So, again, the failure of the immigration judge and the Board's subsequent affirmance that did not address whatsoever the dangerous aspect. That alone is insufficiently reasoned, and it must be remanded on that basis alone. On the standard of review, can you – it's a difficult issue to think through. Can you give me an example of a case where it would be on de novo determination that the BIA would find an error of law, and yet on clear error review, it would not find clear error because of the legal error? So, matter of ZZO, that case, the Board engages in this split factual and legal determination. So a predictive finding, as noted by my brother, Counsel, predictive findings, whether, and in this case, whether or not, you know, the court system would actually follow through. Sure, that's reviewed clear error, but the settled facts themselves, when it comes to the objective reasonability of the fear in relation to a well-founded fear in matter of ZZO, that is reviewed de novo, assessing all of the facts on the record. So adopting that here, the immigration judge and the Board both fail to take into account the considerations of the reasonableness. But I guess what I'm getting is that if the facts are A, B, C, and D, if an IJ says that's not unwilling, and then the Board on clear error review determines that as a matter of law that that is, it would therefore follow that it's clear error. So I'm wondering if we've set up this oppositional view of the two, that in reality I'm having trouble thinking of a case where it would actually manifest itself. I think, as noted also, Matt, HH speaks to those determinations in CAP. As it relates to the unwilling and unable prong, I am not aware of any case that treats those as bifurcated. However — And I realize you've split up the issue a little here today, and I'm asking you about an issue that your fellow counsel has argued. So I'm going to ask ACLU counsel, could you give an example of a case where the BIA would say, as a matter of law, there was an unwillingness, and yet would not have found clear error, precisely because of the legal error. Thanks, Judge Kaye. I'll send you a pin for amicus. So I was not able to find any case involving unwilling or unable, and it seems like no one has raised this claim. However, we didn't cite this in the brief because we didn't think that was the point of our brief for our purposes, but we have a list of some cases where that difference, so the de novo, the authority of the BIA, and the clear error of the fact-finding, it made the ultimate difference to the outcome of the cases. So it was a little bit challenging to find the cases where IJ denied, but then BIA granted based on de novo authority, only because once that happens, then no circuit court case could be treated because the BIA decision is binding on all officers. But we have, I found at least three or four cases where IJ granted the relief, such as catechisms, asylum, withholding. I was just asking for a hypothetical case where you would conclude that there is an error of law, and yet there's no clear error. Yes. So I can give you one hypothetical example, and we will file, as an example, 328 out of this list. So in one case, unpublished BIA decision, the IJ relied on the general corruption, the evidence to say that that's not enough to satisfy unwitting or unable. And then the BIA said the IJ's reliance on that evidence doesn't actually talk about the particular, the persecutor that the noncitizen was concerned about. But the same evidence does talk about that, the problem with that particular persecutor. So based on that evidence, that evidence is sufficient to satisfy the unwitting or unable. And so we are reversing the IJ's conclusion. So in that case, as the court will see, it's a little bit unclear as to, BIA doesn't explicitly say that we have the noble authority, therefore we are reversing it. However, the way that BIA adjudicated that case at least appears to us that the noble authority made a difference for the ultimate conclusion, and we will find that case as a 28-day letter. Thank you. Thank you. Does the government want to respond to that? Thank you. Thank you, counsel. Thank you. That concludes argument in this case. Counsel is excused.